*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0503**

In re the Marriage of: Ryan Chetly Ramsammy, petitioner,
Respondent,

vs.

Ashley Marie Ramsammy,
Appellant.

**Filed December 28, 2015
Affirmed
Connolly, Judge**

Dakota County District Court
File No. 19AV-FA-12-1721

Dennis Felix, Felix Law Office, P.A., Burnsville, Minnesota (for respondent)

Ellen M. Windler, Cylkowski Law Office, P.A., Eagan, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant mother challenges the district court's order equalizing the parties' parenting time with their child. Because the district court did not err in basing its decision

on the best interests of the child or abuse its discretion in following the recommendation of the guardian ad litem (GAL), we affirm.

## FACTS

Appellant Ashley Ramsammy and respondent Ryan Ramsammy were married in January 2010; their son, R., now five, was born in May of that year. When they separated in May 2012, they were living with respondent's mother, who cared for R. while the parties were at work. Appellant and R. remained with her; respondent moved out.

The parties prepared a joint petition for dissolution of their marriage. It provided for joint legal and joint physical custody of R., gave respondent parenting time during the week from 10:00 a.m. Wednesday to 3:00 p.m. Thursday and as arranged on weekends, and imposed a $400 monthly child-support obligation on respondent.

Although appellant and R. moved out of respondent's mother's residence in September 2012, respondent's mother continued to care for R. on Mondays, Tuesdays, and Wednesdays. Respondent often spent time with R. on those days, and despite the parenting-time arrangement in the dissolution judgment, he generally had R. with him from 10:00 a.m. Wednesday until 3:00 p.m. Friday.

In July 2013, respondent told appellant that the two of them had roughly equal parenting time, with respondent (and his mother) actually having a bit more time than appellant. Appellant then began to enforce the parenting-time arrangement of the

2

judgment, reducing respondent's overnights with R. to one per week[1]; she also stopped using respondent's mother for child care. Respondent attributed appellant's reduction of his parenting time to her interest in retaining his $400 child-support obligation.

In April 2014, respondent moved for equal parenting time, specifically for parenting time from 10:00 a.m. Sunday to 3:00 p.m. on Wednesday or Thursday in alternate weeks, and for a commensurate modification of his child-support obligation. Appellant then moved for appointment of a GAL because of possible physical or emotional abuse of R. at respondent's home and for supervised parenting time for respondent. She did not move for an evidentiary hearing.

Following a hearing on both parties' motions, a GAL was appointed, appellant's motion for supervised parenting time was denied, and all other motions were reserved pending the GAL's report.

The GAL's extensive report was filed in December 2014. It recommended that R. have equal time with each parent. Respondent moved to adopt the GAL's recommendation and modify his child-support obligation. At the hearing on that motion, appellant for the first time asked that an evidentiary hearing be held to establish whether R. was endangered. Following the hearing, the district court issued an order adopting the GAL's recommendation, establishing equal parenting time, and modifying respondent's child-support obligation to $92.

---

[1] In so doing, appellant brought the parties out of compliance with the statutory "rebuttable presumption that a parent is entitled to receive at least 25 percent of the parenting time for the child." Minn. Stat. § 518.175, subd. 1(g) (2014).

Appellant challenges that order, arguing that the district court erred in applying the best-interests standard of Minn. Stat. § 518.175, subd. 5(a) (2014), rather than the endangerment standard of Minn. Stat. § 518.18(d) (2014), and abused its discretion in following the GAL's recommendation on parenting time.[2]

### D E C I S I O N

**1.      Application of Minn. Stat. § 518.175, subd. 5(a)**

"Determining the legal standard applicable to a change in parenting time is a question of law and is subject to de novo review." *Dahl v. Dahl*, 765 N.W.2d 118, 123 (Minn. App. 2009).

"[T]he court shall, upon the request of either parent, grant such parenting time on behalf of the child and a parent as will enable the child and the parent to maintain a child to parent relationship that will be in the best interests of the child." Minn. Stat. § 518.175, subd. 1(a) (2014).

> (a) If modification [of parenting time] would serve the best interests of the child, the court shall modify the decision-making provisions of a parenting plan or an order granting or denying parenting time, if the modification would not change the child's primary residence. . . .
> (b) . . . *A modification of parenting time which increases a parent's percentage of parenting time to an amount that is between 45.1 to 54.9 percent parenting time is not a restriction of the other parent's parenting time.*

---

[2] Appellant does not challenge the modification of respondent's child-support obligation.

4

Minn. Stat. § 518.175, subd. 5 (emphasis added).  The italicized language became effective on August 1, 2014.  Thus, because the modification increased respondent's parenting time to 50%, which is between 45.1% and 54.9 %, it did not restrict appellant's parenting time.

Appellant relies on *Suleski v. Rupe*, 855 N.W.2d 330, 335 (Minn. App. 2014) (concerning a parent who argued that her parenting time was impermissibly restricted by a modification giving increased time to the other parent), to argue that the modification was a change in R.'s primary residence and therefore a restriction of appellant's parenting time, so that the district court should have applied Minn. Stat. § 518.18(d) (prohibiting modification of "a parenting plan provision which specifies the child's primary residence" unless, inter alia, the district court finds the child's present environment endangers the child's physical or emotional health).  But *Suleski* applied an earlier version of the statute: The language added to Minn. Stat. § 518.175, subd. 5(b), precludes the existence of a "restriction" here.  Moreover, the parties here did not have a parenting plan (with or without a provision specifying R.'s primary residence),[3] so Minn. Stat. § 518.18(d) would have applied only if the case involved a modification of custody, which this case did not.

Because the district court's modification of the parenting-time schedule gave both parties parenting time between 45.9% and 54.1%, it did not restrict either parent's parenting time, *see* Minn. Stat. § 518.175, subd. 5(b), and because it was not a modification of "a parenting plan provision which specifies the child's primary residence," *see* Minn.

---

[3] The parties had only a parenting-time schedule, and a parenting plan must also designate decision-making responsibilities and a method of dispute resolution.  *See* Minn. Stat. § 518.1705, subd. 2(a) (2014) ("A parenting plan must include" these items).

5

Stat. § 518.18(d), the district court did not err in concluding that the best-interests standard, not the endangerment standard, was appropriate.

## 2.    Parenting Time

The district court has broad discretion in deciding parenting-time questions based on the best interests of the child and will not be reversed absent an abuse of discretion. *Olson v. Olson*, 534 N.W.2d 537, 550 (Minn. 1995). "It is well established that the ultimate question in all disputes over visitation is what is in the best interest of the child." *Clark v. Clark*, 346 N.W.2d 383, 385 (Minn. App. 1984), *review denied* (Minn. June 12, 1984).

The GAL, appointed on appellant's motion, interviewed eight people: R., appellant, respondent, appellant's fiancé, respondent's girlfriend, R.'s play therapist, appellant's fiancé's mother, and respondent's mother, and wrote a detailed report. In summary, it said:

> [I]t is in the best interest of [R.] for [appellant] and [respondent] to share equal parenting time. This reporter believes that the current parenting time schedule does not promote as strong a relationship with [respondent] as it does with [appellant]. This reporter believes that both parents can provide stability, support and love to [R. He] appears to be loved, well adjusted, and well taken care of and it is in the best interest of [R.] for the parents to work together to raise the child.

The district court incorporated the GAL's report by reference and concluded that "an increase in [respondent's] parenting time is in the best interests of [R.] as is shown by the report filed by the [GAL]" and that "[b]ased on the factors constituting the best interests of the child as defined in [Minn. Stat. § 518.17, subd.1(a)] it is in the best interests of the minor child to have equal parenting time with both parties."

6

Effective August 1, 2014, the sentence "[c]onsideration of a child's best interest includes a child's changing developmental needs" was added to Minn. Stat. § 518.175, subd. 5(a) (concerning modification of parenting plans or orders for parenting time). Appellant argues that the district court abused its discretion by not making findings as to R.'s "changing developmental needs." But the district court explicitly found that "[R.] is currently four years of age and only sees [respondent] during the scheduled parenting time of one overnight a week and at any other times as the parties may agree" and implicitly found that the parenting-time arrangement adopted when R. was two was no longer appropriate. Appellant also claims that the district court "simply approved [the GAL's] recommendations verbatim, without analysis or review." But the district court quoted the GAL's report extensively:

> The [GAL] noted in her report that "both parents love and care for [R.] and want what is best for him. It appears that both parents are appropriate with their parenting and are involved in his life." The report also stated that the current schedule does not allow the minor child the necessary time to form a relationship with [respondent as] he has with [appellant]. The [GAL] believes the parties can both "provide stability, support and love to" the minor child who appears "loved, well adjusted, and well taken care of."

(Citations omitted). Thus, the district court's opinion refutes appellant's statement that the district court failed to analyze or review the GAL's report.[4]

By incorporating the GAL's report into the opinion, the district court adopted the GAL's findings that R.'s play therapist says he is doing well, does not believe he is at risk

---

[4] Appellant provides no legal support for her implied view that a district court may not adopt a GAL's report and recommendation by incorporating it into a judgment.

7

of harm with either parent, and "feels that [R.] has two passionate parents that care for him but can't agree on what's best"; that he has "a great relationship with both parents"; and that R. is an only child and gets all the attention at appellant's home but has a step-sibling at respondent's home and that respondent does a good job of balancing the two children. These findings reflect the "changing developmental needs" of a four (now five) year old. *See* Minn. Stat. § 518.175, subd. 5(a).

The district court did not err in selecting the best-interest-of-the-child standard or abuse its discretion in equalizing the parties' parenting time.

**Affirmed.**